# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DANA E. MCCALLA,

    Plaintiff,

v.

ANGELA THOMPSON, LORI DOEHLING, R.N. DEBRA BELLIN, L.P.N. TIFFANY GIMENEZ, R.N. SHARI KLENKE, R.N. JENNIFER DALY, and R.N. CINDY BARTER,

    Defendants.

Case No. 18-CV-1895-JPS

**ORDER**

Plaintiff, a prisoner proceeding *pro se*, filed a complaint and an amended complaint alleging violations of his constitutional rights when he did not timely receive medications and his resulting injuries were ignored. (Docket #1, #11). On January 8, 2019, Magistrate Judge William E. Duffin screened the amended complaint and allowed Plaintiff to proceed on a claim for deliberate indifference to a serious medical need, in violation of the Eighth Amendment, against certain named defendants and unknown John/Jane Doe defendants. (Docket #12). Plaintiff subsequently filed a second amended complaint which identified the Doe defendants. (Docket #20). On March 21, 2019, Magistrate Judge Duffin ordered that the second amended complaint be the operative complaint. (Docket #21). This case was subsequently reassigned to this branch of the Court for disposition.

On June 1, 2020, Defendants Cindy Barter, Debra Bellin, Jennifer Daly, Lori Doehling, Shari Klenke, and Angela Thompson filed a motion for summary judgment, (Docket #110), as did Defendant Tiffany Gimenez,

(Docket #117). These motions are now fully briefed. For the reasons stated below, the Court will grant Defendants' motions for summary judgment and dismiss this case with prejudice. Additionally, the Court will address Plaintiff's pending motion to sanction, (Docket #144).

## 1.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). Internal inconsistencies in a witness's testimony "create an issue of credibility as to which part of the testimony should be given the greatest weight if credited at all." *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1170 (7th Cir. 1996) (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986)). The non-movant "need not match the movant witness for witness, nor persuade the court that [its] case is convincing, [it] need only come forward with appropriate evidence

demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

**2.   RELEVANT FACTS**

Plaintiff was diagnosed with chronic obstructive pulmonary disease ("COPD") in 2002. (Docket #142 at 3–4). In May 2013, Plaintiff arrived at Redgranite Correctional Institution ("Redgranite") and has remained there since. (Docket #131 at 1). COPD is a lung disease that causes an obstruction of the airflow from the lungs, resulting in patients exhibiting symptoms that include breathing difficulties, shortness of breath, wheezing, and recurrent cough. (*Id.* at 3). COPD is a chronic condition that generally progresses over time. (*Id.*) Although there is no cure, there are various treatment options to ease a patient's symptoms. (*Id.*) Plaintiff uses ten different treatments and medications to manage his symptoms. (*Id.* at 3–4).

Plaintiff claims that Defendants, who are staff in the Health Services Unit ("HSU") at Redgranite, were deliberately indifferent to his medical needs by not refilling some of his medications in a timely manner on various occasions between 2016 and 2018. (Docket #111 at 3). Defendants are employed in three different positions, which have specific tasks and responsibilities within the HSU. (*Id.* at 3–8). Nurses are responsible for triaging and responding to health service requests ("HSR"). (*Id.* at 4). Defendants Debra Bellin, Jennifer Daly, Shari Klenke, and Cindy Barter are nurse clinicians. (*Id.* at 3–4). A licensed practical nurse ("LPN") is responsible for processing medication refill requests, but they are not responsible for delivering the medication or writing prescriptions for inmates. (Docket #120 at 1). Defendant Tiffany Gimenez is an LPN. (*Id.*) A health services manager ("HSM") develops procedures, monitors care plans, prepares reports, and acts as a liaison between the prison and outside

providers. (Docket #113 at 2). However, an HSM does not have any direct medical-care contact with the inmates, and she does not evaluate, diagnose, treat, or prescribe medications. (*Id.* at 3). Defendant Lori Doehling was the HSM from July 2009 to September 2017 (she is now the Nursing Coordinator), and the current HSM is Defendant Angela Thompson. (Docket #111 at 3–4).

Medication distribution at Redgranite follows specific protocols laid out in the inmate handbook. (Docket #111 at 5–8). Pursuant to the handbook, an inmate is responsible for requesting a medication refill when he is left with only five to seven days of his current supply. (*Id.* at 6). To make a proper request, the inmate must complete a DOC-3035C "Medication/Medical Supply Refill Request" form and submit it to the HSU. (*Id.*) When the HSU receives a Medication/Medical Supply Refill Request, the LPN first checks whether the refill request was made during the appropriate timeframe (i.e. one week prior to running out of the medication). (*Id.* at 7). If it was, and if the HSU has the medication on hand, the LPN checks the box, "issued," and sends the medication to the inmate. (*Id.*) If the HSU does not have the medication on hand, it has to be ordered. (*Id.*) In that case, the LPN checks the box, "ordered," and sends the medication to the inmate when received. (*Id.*) Additionally, inmates are required to notify the HSU within one month of their prescription expiration date, so that the HSU staff has time to schedule an appointment with a provider, who then determines whether the prescription should be renewed. (*Id.*)

Plaintiff claims that Defendants were deliberately indifferent to his medical needs by not refilling some of his medications in a timely manner

on various occasions between 2016 and 2018. The following is a chronological account of Plaintiff's claims.

On February 25, 2016, Plaintiff submitted a request to refill his Atrovent medication just over a month after receiving his last refill. (Docket #106-2 at 12). The next day, an LPN checked the box, "ordered; will issue when received." (*Id.*) On March 18, 2016, Plaintiff filed an HSR and wrote "refill" as the reason for the request and explained that he had missed "an extreme amount of medication waiting for HSU to send my refill." (*Id.* at 13). Defendant Debra Bellin ("Nurse Bellin") triaged the HSR and interpreted it as a request for medication to help Plaintiff breathe. (Docket #111 at 9–10). During her investigation, she discovered that the pharmacy had not filled the February 26 prescription, and she placed a rush on the refill for the medication so Plaintiff could receive it as soon as possible. (Docket #106-2 at 13). Nurse Bellin informed Plaintiff of her discovery and her remedial action, writing, "Mr. McCalla–I apologize that you have not received your Atrovent. It looks like pharmacy hasn't filled it yet. I ordered it STAT today [and] it should be here Tuesday afternoon. Thanks for being so patient and bringing this to our attention." (*Id.*) Plaintiff received the medication a few days later, on March 22 or 23, and he did not follow up with Nurse Bellin. (Docket #111 at 10).

On March 23, 2016, Plaintiff filed an inmate complaint, RGCI-2016-6478, related to the February 2016 delay of his Atrovent refill. (Docket #106-2 at 7–8). Generally, Plaintiff complained that he had not received his Atrovent in a timely manner, nor had he received a "medical consultation of the effects on [his] health without this medication for long periods of time from HSU." (*Id.*) In the corrective action section of his complaint, he wrote, "Immediate refill of medication. If refills are not available in a timely

manner from DOC pharmacy, HSU to obtain medication from local pharmacy. Additionally: corrective measures to prevent future medication refill delays." (*Id.*) The institution complaint examiner ("ICE") contacted Defendant Lori Doehling ("HSM Doehling") for help investigating Plaintiff's statements. (Docket #111 at 11). HSM Doehling acknowledged the delay and took corrective action to address the oversight. (*Id.*) Specifically, HSM Doehling conducted additional training with the LPN who had handled the medication refill request. (*Id.*) The ICE and the Reviewing Authority ("RA") affirmed the inmate complaint. (*Id.*)

Next, on April 1, 2017, a month after his last refill, Plaintiff submitted a refill request for his Spiriva. (*Id.*) Plaintiff did not follow the required protocol and failed to request the medication five to seven days before he ran out of that medication. (Docket #118 at 11). The same day, Defendant Tiffany Gimenez ("LPN Gimenez") ordered Plaintiff's medication and marked the "ordered" box. (*Id.*; Docket #111 at 11). The medication came in on April 3, 2017. (Docket #118 at 11). On April 14, 2017, Plaintiff submitted an HSR regarding his Spiriva refill, stating that he was still waiting on it. (Docket #111 at 12). Defendant Shari Klenke ("Nurse Klenke") triaged the HSR on April 15, 2017. (*Id.*) She interpreted the HSR as a request for information regarding his Spiriva refill and restarting his medication. (*Id.*) Nurse Klenke discovered that Plaintiff's Spiriva was in the HSU, so she called him to the HSU to retrieve it that same day (April 15). (*Id.*) She also attached information about Spiriva to her response to Plaintiff's HSR. (*Id.*) Plaintiff did not follow up with Nurse Klenke. (*Id.*) He also did not ask the staff who exchanged his inhaler in the HSU about the side effects of not taking his Spiriva for a few days. (*Id.*)

On April 19, 2017, Plaintiff submitted an inmate complaint, RGCI-2017-10643, about the April 2017 Spiriva delay. (*Id.*) The ICE contacted HSM Doehling regarding the complaint. (*Id.*) HSM Doehling reviewed Plaintiff's medical chart, and concluded that based on the dates he received the Spiriva, he would have been without the medication for roughly 13 days over the span of a few months. (*Id.* at 13). Since multiple HSU staff would have processed the refill requests and distributed the medication, HSM Doehling determined the issue of occasional delays necessitated additional staff-wide training. (*Id.*) The ICE and the RA affirmed the complaint and stated that "an issue was identified and staff training will [] occur to address the issue." (Docket #79-3 at 4).

On December 7, 2017, Plaintiff submitted an HSR requesting a refill of his Spiriva. (Docket #111 at 13). LPN Gimenez ordered his medication the same day. (*Id.*; Docket #118 at 12). Plaintiff's Spiriva arrived from the pharmacy a week later on December 14, 2017. (Docket #111 at 13). On December 15, 2017, Plaintiff submitted an HSR regarding his Spiriva refill. (*Id.* at 13–14). Defendant Jennifer Daly ("Nurse Daly") triaged the HSR. (*Id.* at 14). Nurse Daly interpreted Plaintiff's HSR as a request for information about a medication refill he had not yet received. (*Id.*) When Nurse Daly investigated Plaintiff's statements, she learned the HSU had received the medication and exchanged Plaintiff's empty inhaler for a new inhaler that same day. (*Id.*) Both Nurse Daly and the new HSM, Defendant Angela Thompson ("HSM Thompson"), noted Plaintiff received his medication on their return responses to his HSR. (*Id.*) Plaintiff did not follow up with Nurse Daly or HSM Thompson. (*Id.*)

On December 15, 2017, Plaintiff submitted RGCI-2017-32019, alleging that he was denied appropriate care when he did not receive his

December 7, 2017 requested Spiriva inhaler until December 15, 2017. (Docket #79-4 at 7). Doehling, who had been promoted to Nursing Coordinator, affirmed Plaintiff's complaint, with the following modification: "LPNs to be instructed on the need to contact Central Pharmacy for STAT needs or get locally where indicated." (Docket #111 at 15). HSM Thompson responded to Doehling's instruction by holding additional training with the LPNs (i.e., the staff responsible for handling the medication refill requests at the time). (*Id.*)

On June 13, 2018, Plaintiff submitted a refill request for his Spiriva inhaler. (Docket #111 at 19). On June 17, 2018, an LPN responded that all medications had been issued. (Docket #113 at 12). On June 23, 2018, Plaintiff submitted an HSR complaining that he had not received his Spiriva inhaler. (*Id.*) This was the first time HSU learned that Plaintiff had not received his inhaler with the other two medications distributed to him on June 17. (*Id.*) Once notified of the issue, LPN Gimenez found the inhaler on the HSU medication cart and called Plaintiff to HSU to exchange the inhaler the same day. (*Id.*) During this time, HSU was preparing to convert to electronic medical records, which occurred on June 25, 2018. (*Id.*) Because the HSU was in the middle of a conversion, HSM Thompson acknowledged there may have been confusion about where Plaintiff's inhaler should have been kept. (Docket #111 at 19).

On June 23, 2018, Plaintiff submitted RGCI-2018-13819, alleging that he was denied appropriate care because he was (and had consistently been) denied his medication in a timely fashion and his health had suffered because of it. (Docket #79-5 at 7). The complaint was accepted and affirmed by the ICE and the RA. The ICE summary states: "Based on correspondence received from inmate McCalla it was determined that the medication was

not dispensed to the inmate and it was found to have been placed in the medication cart at HSU in error. This placement error did cause the inmate to be without the medication for 5 days." (*Id.* at 5).

On August 16, 2018, Plaintiff's Symbicort prescription expired. (Docket #111 at 20). Plaintiff submitted a refill request for his Symbicort on August 22, 2018. (*Id.*) That same day, an LPN checked the box, "order has expired, forwarded to Prescriber for renewal." (*Id.*) The LPN also submitted a prescription renewal request to an advanced care provider. (*Id.*) The advanced care provider renewed the prescription, but it was inadvertently renewed for only two days. (*Id.* at 21). As a result, when Plaintiff submitted another medication refill request on August 27, 2018, the LPN stated it could not be refilled. (*Id.*) The order was investigated by the provider, corrected, and renewed for six months. (*Id.*)

On August 30, 2018, Plaintiff submitted RGCI-2018-18571, alleging that he was denied and/or delayed a medication refill. (Docket #79-6). The complaint was accepted and affirmed by the ICE and the RA. The ICE summary states:

> When the inmate requested a refill the order had expired. On 8/22/18 the LPN informed the MD of the medication expiration. The MD did renew the order however in error the order was only renewed for 2 days. On 8/31/18 an active order was written. The delay in the medication was not intentional as the LPN had informed the MD of the need to renew the order. However an error did occur causing for the inmate to be without his medication for a period of time.

(*Id.* at 5).

On July 2, 2018, Plaintiff received a refill of his Albuterol inhaler. (Docket #111 at 15). This inhaler has a meter showing how many puffs remain, which allows the user to know when the inhaler will need to be

Page 9 of 17
Case 2:18-cv-01895-JPS   Filed 03/05/21   Page 9 of 17   Document 145

refilled before it runs out. (*Id.*) Plaintiff's prescription for Albuterol expired on August 16, 2018. (*Id.*) Plaintiff did not notify HSU, as required, when he was less than a month from the prescription expiration date. (Docket #118 at 18). On September 11, 2018, Plaintiff realized his inhaler was empty and he requested a refill the next day. (Docket #111 at 15). An LPN checked the box, "Can't be refilled." (*Id.* at 16). Plaintiff submitted two more refill requests for his Albuterol inhaler on September 14. (*Id.*) On one, an LPN checked the box, "Issued," and dated it "9-14-18." (*Id.* at 16). On the other, the box, "Can't be refilled," was checked. (*Id.*) On September 15, 2018, Plaintiff submitted an HSR that stated, "Urgent Emergency–Addressed to HSUM Ms. Angela Thompson I can't breath[e]." (*Id.*) Defendant Cindy Barter ("Nurse Barter") triaged the HSR and interpreted Plaintiff's request as a request for information about his Albuterol. (*Id.* at 17). She checked Plaintiff's refill request form, which showed he had been issued the Albuterol the day before. (*Id.*) Nurse Barter did not see Plaintiff's statement "I cannot breath[e]," and, by the time she received his HSR, she believed he had received his requested medication. (*Id.*) It was later brought to HSU staff's attention that Plaintiff had received Albuterol nebulizer solution, not his Albuterol inhaler. (*Id.*) As soon as HSM Thompson realized that Plaintiff had received a different form of the medication than requested, the medication was switched out, and HSM Thompson verified that Plaintiff had received his Albuterol inhaler. (*Id.*)

After HSM Thompson received Plaintiff's September 2018 HSR about his Albuterol inhaler, she discussed some concerns and changes with medication refills at the next staff meeting in October. (*Id.* at 17–18). She also implemented a new workflow change for processing medication refill

requests, and that workflow change was finalized at the November 2018 staff meeting. (*Id.* at 18).

Lastly, on September 25, 2018, Plaintiff submitted RGCI-2018-20447, alleging that the health services unit nursing staff denied him medication. (Docket #79-7). The complaint was accepted, and the ICE recommended dismissal. The ICE summary states that "[i]n review of DAI Policy 500.80.27 and the RGCI Inmate Handbook inmates are to request medication refills when they are down to a 5 to 7 day supply." (*Id.* at 2). Plaintiff was already out of medication when he made the refill request. "The delay in medication is due to the inmate not following the timelines and procedure for requesting a refill." (*Id.*)

**3. ANALYSIS**

As noted above, Plaintiff was allowed to proceed on claims of deliberate indifference to a serious medical need, in violation of the Eighth Amendment, for Defendants failing to timely provide Plaintiff with several of his inhalant medications and ignoring his alleged injuries caused by the delays. To sustain such claims, Plaintiff must show: (1) an objectively serious medical condition; (2) that Defendants knew of the condition and were deliberately indifferent in treating it; and (3) this indifference caused him some injury. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

**3.1 Objectively Serious Medical Condition**

An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton

infliction of pain if not treated. *See Reed v. McBride*, 178 F.3d 849, 852 (7th Cir.1999).

The parties have agreed or do not contest, for the purpose of summary judgment, that Plaintiff's COPD is an objectively serious medical condition. (Docket #111 at 24). Therefore, the Court will presume that Plaintiff's COPD is an objectively serious medical condition for purposes of summary judgment and move on to the next step.

### 3.2 Deliberate Indifference

The deliberate indifference inquiry has two components. "The official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk." *Gayton*, 593 F.3d at 620. Negligence cannot support a claim of deliberate indifference, nor is medical malpractice a constitutional violation. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). Even if a defendant recognizes the substantial risk, she is free from liability if she "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 843 (1994). A plaintiff faces an uphill battle when raising a deliberate indifference claim, as "[l]iability under [that] standard requires more than negligence, gross negligence or even recklessness; rather, it is satisfied only by conduct that approaches criminal wrongdoing, i.e., 'something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Goodvine v. Ankarlo*, 9 F. Supp. 3d 899, 934 (W.D. Wis. 2014) (quoting *Farmer*, 511 U.S. at 835). Additionally, to show that a delay in providing treatment is actionable under the Eighth Amendment, a plaintiff must also provide evidence that the delay exacerbated his injury or unnecessarily prolonged pain. *Petties v. Carter*, 836 F.3d 722, 730–31 (7th Cir. 2016).

As detailed herein, Defendants were not deliberately indifferent to Plaintiff's health risk, but rather, acted promptly to address specific issues and, in some instances, implemented training and new procedures to prevent the issues from occurring again.

### 3.2.1 Nurse Defendants

Nurses Bellin, Daly, Klenke, and Barter did not act with deliberate indifference toward Plaintiff. (Docket #111 at 25). During the relevant time, the LPNs—not the nurses—were responsible for processing medication refills or expired medications. (*Id.*) Because "no prisoner is entitled to insist that one employee do another's job," Plaintiff cannot hold the nurses liable for a job for which they were not responsible. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Since none of the nurses were involved in the initial processing of Plaintiff's medication refills or expired medications, they were not responsible for the initial delays. (Docket #111 at 25). Moreover, once the nurses became aware of refill issues through Plaintiff's HSRs, they leapt to action. (*Id.* at 25–26). They investigated the medication refill issues and promptly addressed them by providing Plaintiff with the requested medications. (*Id.*)

### 3.2.2 LPN Defendant

LPN Gimenez also did not act with deliberate indifference to Plaintiff. She was responsible for ordering refills of Plaintiff's medications when the requests came in. LPN Gimenez was not, however, responsible for delivering the medications or for writing the prescriptions. There is no evidence that LPN Gimenez did not do her job properly. In contrast, she quickly ordered or filled the refill requests and, when notified of an issue, helped resolve it promptly.

### 3.2.3 HSM Defendants

There is no evidence that HSM Doehling or Thompson acted with deliberate indifference toward Plaintiff. Doehling and Thompson acknowledged the delays and took corrective action with staff. This included: additional training with specific LPNs who made errors; additional training with all LPN staff when more than one processed the refill or expired medication; and eventual shifting of a component of the process to the nurse clinicians. HSM Doehling's and Thompson's actions worked, and Plaintiff acknowledges that his medications are now being refilled in a timely manner. (Docket #111 at 27; Docket #131 at 29).

### 3.2.4 Plaintiff's Arguments

In response to Defendants' motions, Plaintiff argues that the nursing staff acted with deliberate indifference because they did not assess him after triaging his health service requests. (Docket #129 at 5, 7–17). He also blames the HSMs for not ensuring that staff assessed him. (*Id.*) Plaintiff further takes issue with the need to renew prescriptions for medications to treat chronic conditions. (*Id.* at 7–8). Such arguments are simply insufficient to defeat summary judgment in this case.

First, Plaintiff asserts that the nurses violated corrections policy because they did not assess him after reading about his alleged "symptoms." (*Id.* at 5, 7–17). Even if these allegations were true, they do not create constitutional liability; a violation of prison policies is not the same as a violation of the Eighth Amendment. *Lennon v. City of Carmel, Ind.*, 865 F.3d 503, 509 (7th Cir. 2017).

Moreover, although Plaintiff believes that it would have been best for him to have been assessed by staff based on his health service requests, the "test of deliberate indifference ensures that the mere failure of the

Page 14 of 17
Case 2:18-cv-01895-JPS   Filed 03/05/21   Page 14 of 17   Document 145

prison official to choose the best course of action does not amount to a constitutional violation." *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002). The Nurse Defendants took reasonable actions after reviewing his health service requests. Namely, based on the context and content of Plaintiff's HSRs, the nurses reasonably believed he was complaining about medication refills, not symptoms. If Plaintiff wanted to be seen, he had every opportunity to clearly communicate that he wanted to be assessed or wanted an appointment with the HSU through his HSRs. But, Plaintiff did not clearly communicate his desire to be assessed, and the nurses reasonably believed that Plaintiff's HSRs were about medication refills and acted in accordance with that reasonable belief. For example, believing that Plaintiff's HSRs were requesting a refill of medication, the nurses investigated Plaintiff's claims, and if they discovered that his medication had not been ordered, they placed a rush on the prescription and wrote to Plaintiff explaining what happened and when to expect his medication. (Docket #111 at 8–16). Additionally, when Plaintiff submitted an HSR requesting information about his medication, the nurses looked into his request and provided an answer to Plaintiff regarding the status of his medication; or if they found the medication was in the HSU, they would call him down to retrieve it. (*Id.*) Their reasonable actions do not rise to the level of deliberate indifference under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 845 (1994) ("Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause.").

Additionally, Plaintiff finds it ridiculous that prescriptions expire for medications needed to treat chronic conditions. (Docket #129 at 7–8). Although Plaintiff wishes it were otherwise, prescriptions expire and must

be renewed by medical professionals. This is true in the prison system, just as it is true for the general public. The fact that medication prescriptions expire does not implicate any actions on behalf of Defendants. "Individual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation.'" *Minix v. Canarecci*, 597 F.3d 824, 833–34 (7th Cir. 2010) (quoting *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003)). Without personal liability, there is no claim under § 1983. Thus, Plaintiff's arguments fail to create an issue of material fact that could defeat Defendants' motions for summary judgment.

### 4. CONCLUSION

In sum, Defendants responded quickly to Plaintiff's refill requests and any issues that followed. They did not turn a blind eye to the issues that occurred. Instead, Defendants investigated the issues presented and took corrective action as necessary. Indeed, HSM Doehling and Thompson took meaningful steps to address the issues Plaintiff faced with medication refills. This is simply not a case of deliberate indifference on any level. Therefore, the Court will grant Defendants' motions for summary judgment, (Docket #110, #117), and dismiss this case with prejudice.

Additionally, Plaintiff's pending motion to sanction, (Docket #144), will be denied because Redgranite, in accordance with the Prison Litigation Reform Act, has properly been collecting from Plaintiff's account when the balance of the account exceeds $10.00 or the income credited to the account in the preceding month exceeds $10.00, and setting it aside as a distinct account. *May v. Christain*, 400 F. Supp. 3d 789, 792–93 (E.D. Wis. 2019). Once the amount collected exceeds $10.00, Redgranite will send the money to the Court. *Id.* Therefore, Redgranite is performing its duties properly and the motion to sanction must be denied.

Accordingly,

**IT IS ORDERED** that Defendants Cindy Barter, Debra Bellin, Jennifer Daly, Lori Doehling, Shari Klenke, and Angela Thompson's motion for summary judgment (Docket #110) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Tiffany Gimenez's motion for summary judgment (Docket #117) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to sanction (Docket #144) be and the same is hereby **DENIED;** and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 5th day of March, 2021.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge